IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THOMAS W. HOLMES,                )
                                 )
            Plaintiff,           )
                                 )
      v.                         )          CASE NO. 2:12-CV-279-WKW
                                 )               [WO]
ALABAMA BOARD OF                 )
PARDONS & PAROLES,               )
                                 )
            Defendant.           )

## MEMORANDUM OPINION AND ORDER

Before the court is a motion for summary judgment (Doc. # 55) filed by Defendant Alabama Board of Pardons & Paroles ("the Board"). Plaintiff Thomas W. Holmes has filed a response in opposition (Doc. # 70), to which the Board has replied (Doc. # 71). After careful review of the arguments, evidence in the record, and relevant law, the court finds that the Board's motion for summary judgment is due to be granted.

## I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Personal jurisdiction and venue are uncontested.

## II. STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).  The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant.  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact.  *Id.*; Fed. R. Civ. P. 56(c)(1)(A).  Or, the movant can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact.  Fed. R. Civ. P. 56(c)(1)(B).  If the movant meets its burden, the burden shifts to the nonmoving party to establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists.  *Celotex*, 477 U.S. at 324.  A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor.  *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## III.  BACKGROUND

### A.   <u>Facts</u>

Mr. Holmes is a white male who has been employed by the Board since February 2001.  He began as a probation and parole officer or PO I/II, an entry

2

level position in his field, and remained in that position until June 2013 despite his efforts to be promoted into vacant PO III and PO IV positions.[1]   Mr. Holmes alleges that the Board has discriminated against him on the basis of his race and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").   He claims he was passed over for promotions notwithstanding his good evaluation record as an employee and his possession of a master's degree.   He also claims that people within the Board's ranks wrongfully assisted non-white and female candidates in promotion by furnishing them with answers to Board tests.

PO I/II officers are eligible to promote to PO III upon completion of two years of service as PO I/II.   Mr. Holmes has been promoted only recently to PO III during the pendency of this suit.   Formerly, Mr. Holmes, and others at PO I/II rank, would have been eligible to promote to PO IV without first promoting to PO III, but the Board and the State Personnel Department ("Personnel Department") formally modified the qualifications for PO IV to require two years' service as PO III.   This revision to the PO IV experience requirements occurred after Mr. Holmes filed his EEOC charge in 2011.   The Board represents that even though it was once possible to promote to PO IV without serving as PO III, no one ever made that leap, and Mr. Holmes admits that he knows of no person who promoted

---

[1] The record and the parties often refer to PO III positions as "Senior" or "Senior Officer" positions, and to PO IV positions as "District Manager" positions.  Registers for PO III identify the position as classification "60903."  PO IV is identified by classification "60904."

directly from PO I/II to PO IV.  (Dep. Thomas Holmes, at 98–99 (Doc. # 55-1, at 49–5).)

### 1.   *Promotion Process* [2]

When a Board employee like Mr. Holmes wishes to be promoted, he applies to the Personnel Department, a separate state entity.  PO III candidates must take a test.  If the applicant is eligible to take the test, the Personnel Department furnishes the test questions.   The test is a "take-home, open-book" test.  (Dep. Cynthia Dillard, at 6, (Doc. # 79-1, at 3).)  The test scores of the applicants are organized into groups or "bands" by the Personnel Department and provided to the Board in the form of a "register" or "certificate of eligibles."  (*See, e.g.*, Doc. #71-4.)  All persons grouped into a particular "band" are considered equal with one another, even though their scores might not have been identical.

The Board explains that PO III registers are "continuous" and constantly in flux because candidates are testing repeatedly and at different times, and thus, "new people are coming on the register and some people are falling off the register." (Dep. James Begley (Doc. # 71-1, at 7).)  PO IV registers, however, are "closed," meaning that the Personnel Department opens the position for a short period of time, accepts applications, and closes the register until a later date.  A

---

[2] The facts concerning the Personnel Department's maintenance of registers and its methods of ranking employees were only made clear in the Board's *reply brief*.  (Doc. # 71, at 2–5.)  The Board explains nothing about the promotion process in its sixty-four page briefing in support of its motion for summary judgment.

person like Mr. Holmes can "fall off" a register," and if he does, he must re-test. Additionally, applicants can elect to be considered for vacancies in particular counties in Alabama, or they can seek consideration for vacancies statewide. Registers, therefore, reflect applicants who are interested in vacancies in specific locations.  Applicants receive their rank statewide and by preferred county.

The Board represents that to fill a vacant position, it requests a register of eligible candidates from the Personnel Department, which is comprised of the top ten eligible persons on the register, plus the names of all applicants whose scores are tied with the tenth highest eligible person.  It is thus possible that more than one person may share a ranking, whether on a statewide or a county-specific register.  The registers indicate the race, but not the sex, of the candidates.[3]  The director of the division in which the vacancy exists and the lower-level district manager review the list of eligible candidates, conduct interviews, and make their recommendations that go up the chain of command of the Board for final approval. The Board asserts that the recommendations of the supervisors over the vacancy are "a major factor" in deciding whether a candidate is selected for promotion. (Doc. # 71, at 21.)

The Board claims that upon reviewing the registers created during the time period at issue in this suit, it has found that Mr. Holmes was listed as an eligible

---

[3] But a candidate's gender could typically be assumed based on first name.

candidate on only seven registers, but he was not, for whatever reason, on seventeen of the registers.  Mr. Holmes's non-promotion from some of those particular registers is discussed *infra* in the discussion section.

### 2. *Mr. Holmes's Specific Complaints of Non-Promotion*

Mr. Holmes's amended complaint specifically references 2009 and 2010 as times at which he was qualified for promotion but passed over, but Mr. Holmes does not quantify the number of times he was passed over during those years; neither does he identify the race and sex of the individuals who were promoted instead of him.  (Doc. # 41, at ¶ 17–18.)  The amended complaint more specifically alleges that around May 2011, two, less-qualified black males and one less-qualified white female were promoted to PO III vacancies.  (Doc. # 41, at ¶ 22.)  Mr. Holmes agrees, in his opposition brief, with the Board's identification of these persons as Elizabeth Planer (white female, promoted Apr. 27, 2011), Reginald Carter (black male, promoted Apr. 27, 2011), and Christopher Causey (black male, promoted June 30, 2011).  (*See* Def. Exh. III (Doc. # 55-14, at 2).)  The appointments were for vacancies in Montgomery County.  The Board acknowledges that Mr. Holmes was an eligible candidate on the registers from which Planer, Carter, and Causey were selected and promoted.  (Doc. # 71, at 4.)[4]

---

[4] The parties dispute whether Mr. Holmes's claims also encompass the promotions of "Reloyonya" Richardson (black female, promoted Feb. 24, 2011) and Kristi McCay (white female, promoted June 13, 2013).  These promotions are not identified in the amended

Mr. Holmes also alleges in the amended complaint that he was passed over in the summer of 2011 for promotion to *two* PO IV positions, but he does not identify the race or sex of his comparators.  (Doc. # 41, at ¶ 23.)  The Board has concluded that Mr. Holmes is referring to a *single* promotion – Roderick Chambers (black male, Sept. 13, 2011).[5]   (Doc. # 55-14, at 3.)   All other appointments to PO IV during the summer of 2011 were white males like Mr. Holmes.

In his opposition brief, Mr. Holmes asserts that from January 2007 to August 2011, twenty-three officers were promoted to PO III in various locations within Alabama, and of those twenty-three, twenty-two were non-white and/or female. (Doc. # 70 (citing Doc. # 55-14).)   He alleges that discovery in this case has revealed that his experience with the Board was superior to all of those twenty-three candidates, and that unlike eighteen of those candidates, he had more education (*i.e.*, a graduate degree).   This information is unhelpful, however, because Mr. Holmes does not offer evidence to prove that he was in fact on the

---

complaint.  Rather, Mr. Holmes first identifies them in the opposition brief.  (*See* Doc. # 70, at 12.)  The Board asserts that Mr. Holmes was not on the registers for either Richardson's or McCay's promotions.  (Doc. # 71, at 16, 18 (citing Doc. # 71-4 without specifying particular page numbers).)  Presumably, Richardson, whose first name is "Reydonya" on the registers, was promoted from the register returned in February 2011 for a vacancy in Blount County, (Doc. # 71, at 24), and McCay was promoted from the register returned in June 2011 for a vacancy in Jefferson County, (Doc. # 71-4, at 29).  Mr. Holmes has not submitted evidence or argument to rebut the Board's contention that he cannot complain about not being promoted to positions that he did not seek.  Thus, the promotions of Richardson and McCay are irrelevant to this suit.

[5] The Board says that September 13, 2011 is not "summer."  (Doc. # 71, at 11.)  The court takes judicial notice that the last official day of summer in the Northern Hemisphere is the day of the autumn equinox, which is typically around September 22.

registers from which those persons were promoted, and furthermore, he does not name the comparators who he says were less qualified than him.  Additionally, the Board accuses Mr. Holmes of pulling these numbers "out of the air."  (Doc. # 71, at 5.)  The Board asserts that the evidence actually shows that it filled forty-seven appointments to PO III between January 2007 and August 2011, and twenty appointments were of white males like Mr. Holmes.  (Doc. # 71, at 6 (citing Doc. # 55-14.)

Mr. Holmes also furnishes Personnel Department documents ranking him: (1) third on the statewide register in July 2007 for PO III vacancies; (2) third on the statewide register in August 2010 for PO III vacancies; and (3) tenth on the statewide register in August 2010 for PO IV vacancies.  (Docs. # 70-2, 70-3.).  The same documents show his rank for various counties.[6]

There are no specific allegations or arguments that the comparators at issue in this suit cheated on or were otherwise assisted in taking the tests administered by the Personnel Department.  (*See generally* Docs. # 41, 70.)

### 3.    *EEOC Charge*

In late July 2011, Mr. Holmes contacted the EEOC, and on August 8, 2011, without the assistance of counsel, he signed and submitted a formal charge of

---

[6] For reasons to be explained *infra* in the discussion, Mr. Holmes's ranks in 2007 and 2010 are irrelevant to his claims in this suit.

8

discrimination, alleging that the Board had passed him over "at least six times" for PO III and PO IV positions in favor of less qualified individuals.  His charge also alleged that black officers were given an advantage by receiving exam answers ahead of testing.  On the whole, he asserted that the Board had discriminated against him on the basis of age, race, and sex.[7]  (*See* Doc. # 55-5, at 3.)

The Board responded to the EEOC charge.  On December 29, 2011, Mr. Holmes received his Notice of Right to Sue Letter.

### B.   <u>Procedural History</u>

Within ninety days of receiving his right to sue letter, Mr. Holmes filed this action, proceeding *pro se*.  Counsel for Mr. Holmes appeared in May 2012 and received permission to amend the complaint.  In his amended complaint, Mr. Holmes brought multiple federal-law and state-law counts against the Board as an entity, its members, and various top-level officials employed by the Board. Defendants moved to dismiss the claims, and the court granted their motion as to all claims except for Mr. Holmes's Title VII race and sex discrimination claims against the Board.  (Doc. # 48.)  Well before the time for discovery closed, the Board filed the instant motion for summary judgment.  (Doc. # 55.)

---

[7] Mr. Holmes's age discrimination claims were dismissed on January 17, 2013.  (*See* Doc. # 48.)

# IV.  DISCUSSION

The Board argues that it is entitled to summary judgment on the Title VII claims for four reasons.

## A.    **Whether Mr. Holmes's Claims are Moot**

The Board argues, at the end of its summary judgment brief, that most of Mr. Holmes's claims are moot because the Board has promoted Mr. Holmes to PO III.   (Doc. # 55, at 62 ("Plaintiff's claim for promotion to PO[ III] is quite obviously moot because he has already been promoted to this classification; accordingly, his numerous failure-to-promote claims regarding the PO[ III] classification should be dismissed as moot . . . .").)  Mr. Holmes responds that he is still entitled to back pay and benefits and other damages and injunctive relief, and calls the Board's argument "ludicrous."  (Doc. # 70, at 21.)  The Board replies that Mr. Holmes "mischaracterizes" its mootness argument.  (Doc. # 71, at 24.)[8]  In the reply brief, the Board agrees with Mr. Holmes that, if he succeeds on his claims, he would be entitled to other relief – just not another promotion.

There is no basis for granting summary judgment on mootness grounds.  The discussion proceeds to the Board's other arguments.

---

[8] A fair reading of the Board's original mootness argument reveals that Mr. Holmes's interpretation is at least in the ball park.

**B.**      **Whether Mr. Holmes's Non-Promotion Claims Fall Within the Ambit of the EEOC Charge**

The Board contends that Mr. Holmes's claims were not the subject of the EEOC charge and investigation.  A judicial complaint for relief under Title VII "is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004).  "[J]udicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC [charge,]" but "allegations of new acts of discrimination" are not allowed.  *Id.* at 1279–80.  Courts must liberally construe EEOC charges prepared without the assistance of counsel.  *See id.* at 1280.

The Board argues that the EEOC charge, like the amended complaint, does not identify specific promotions by date or by the name of the comparator.  The Board asserts that the amended complaint's allegations appear to be broader than the EEOC charge's allegations.  While the Board's frustration with Mr. Holmes's reluctance to pinpoint instances of discriminatory non-promotion is understood, the nature of the claims in the amended complaint is consistent with the allegations lodged against the Board in the EEOC charge.  (*Compare* Doc. # 41 *with* Doc. # 55-5, at 3.)   There is no just basis for barring Mr. Holmes's race and sex discrimination claims as they relate to the PO III position.

11

The Board does persuade, however, that Mr. Holmes's claims relating to the PO IV position are beyond the scope of the EEOC charge.  The Board argues that Mr. Holmes's EEOC charge describes only *age* discrimination in the promotion of an unnamed person to PO IV, and further, that the amended complaint is not specific about the race or gender of the two persons allegedly promoted to PO IV in the summer of 2011.  (*See* Doc. # 55-5 ("I was also denied a promotion to the position of district manager and a less experienced, less educated, *younger* officer was promoted." (emphasis added)); Doc. # 41 ("Plaintiff was also passed over for promotion to two vacancies in the [PO IV] position in the summer of 2011.").) The charge also alleges broadly that black officers were provided with examination answers − yet this allegation is without particular reference to the PO III or PO IV position.  Furthermore, in a letter to the EEOC dated September 8, 2011 − one month after the charge was filed − Mr. Holmes complained specifically about the promotion of Roderick Chambers, but mentioned that he "happens to be black." (Doc. # 55-5, at 17.)  Thus, the thrust of his grievance about Mr. Chambers and others being promoted to the PO IV position is that the Board "promotes . . . younger, less educated, and less experienced" officers while passing over older employees like himself.  (Doc. # 55-5, at 17.)

Thus, the EEOC charge, as it relates to Mr. Holmes's non-promotion to PO IV, is limited to age discrimination claims − not Title VII race or sex

discrimination claims, and the ADEA claims have been dismissed.  (*See* Doc.
# 48.)  Therefore, the Board is entitled to summary judgment as to Mr. Holmes's
complaint that he was denied promotion to PO IV on the basis of race or sex.

## C.   Whether Mr. Holmes's Claims Are Time-Barred

Next, the Board argues that "[t]o the extent [Mr. Holmes] makes claims for
race and sex discrimination for . . . promotions prior to February 10, 2011, they are
time-barred."  (Doc. # 55, at 37.)[9]  To be considered timely, an EEOC charge
"must have been filed within 180 days of the 'alleged unlawful employment
practice.'"  *Beavers v. Am. Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir. 1992)
(quoting  42  U.S.C.  § 2000e–5(e)(1)).    Failure  to  comply  with  this  statutory
requirement requires courts to dismiss claims for the plaintiff's failure to exhaust
his administrative remedies.  *Thomas v. Ala. Council on Human Relations, Inc.*,
248 F. Supp. 2d 1105, 1115 (M.D. Ala. 2003).

Each instance that the Board allegedly discriminated against Mr. Holmes by
promoting someone else on the basis of race or sex counts as a discrete
discriminatory act. *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101
(2002)).   "[D]iscrete discriminatory acts are not actionable if time barred, even
when they are related to acts alleged in timely filed charges.  Each such act starts a
new clock for filing charges."  *Id.* (internal quotation marks and citation omitted).

---

[9] The court calculates that *February 9*, 2011, is 180 days prior to August 8, 2011.

Accordingly, the Board is correct that any allegedly discriminatory action to promote a female or non-white candidate, or to provide test-taking assistance to the same, is not actionable if it occurred before February 9, 2011. This whittles down Mr. Holmes's claims to the promotions of Planer, Carter, and Causey to PO III.

**D.      Whether Mr. Holmes Carries His Burden of Persuasion under _McDonnell Douglas_**

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of" the individual's race or sex.  42 U.S.C. § 2000e-2(a)(1).  Where, as here, there is no direct evidence of unlawful race- or sex-based discrimination, the plaintiff typically must use the burden-shifting framework set out in _McDonnell Douglas Corp. v. Green_, 411 U.S. 792 (1973), to show indirect evidence of discrimination.  _Wilson v. B/E Aerospace, Inc._, 376 F.3d 1079, 1087 (11th Cir. 2004).  Under the _McDonnell Douglas_ framework, the plaintiff must first make a prima facie case of discrimination.  _Id._  If he succeeds, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action.  _Id._  If the defendant satisfies its burden, then the burden of production shifts back to the plaintiff to rebut the proffered reason as pretext for discrimination.  _Id._  "Despite the shifting of the burden of production between the plaintiff and the defendant under the _McDonnell Douglas_ framework, the ultimate

burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 1088 (internal quotation marks omitted).

### 1.   *Prima Facie Case*

First, the Board contends that Mr. Holmes fails to satisfy his burden of making a prima facie case of race or sex discrimination.  In a failure to promote action, it is the plaintiff's burden to show that (1) he is a member of a protected class, (2) he was qualified for and applied for promotion, (3) he was rejected for promotion in spite of his qualifications, and (4) an equally or less qualified employee who is not a member of his protected class was promoted instead.  *See Wilson*, 376 F.3d at 1089; *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010).

### a.   **Unidentified Comparators Treated More Favorably**

The Board complains that Mr. Holmes does not know who his comparators are.  The responsive briefing makes it plain that Mr. Holmes and the Board agree, at a minimum, that Planer, Carter, and Causey were promoted to PO III from registers on which Mr. Holmes was listed.  As stated earlier, the remaining disparate treatment analysis focuses on the promotion of these comparators.

### b.    Adverse Employment Action

The Board contends that Mr. Holmes fails to establish that he suffered an adverse employment action.  (Doc. # 55, at 54 (citing *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001)).)  The Board says that because Mr. Holmes remained employed and received salary, benefits, and merit raises, and because he has recently been promoted to PO III, he has not suffered a "tangible adverse impact financially or otherwise."  (Doc. # 55, at 56.)  This is a losing argument.   An employer's failure to promote is a well-established adverse employment action.  *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998).

### c.    Comparators Similarly Situated in All Relevant Respects

The Board also protests that Mr. Holmes cannot show that the comparators who were promoted were "similarly situated [to him] in all relevant respects." *Brown*, 597 F.3d at 1174.  The Board claims that Mr. Holmes cannot prove that others were similarly situated to him because he does not know (1) the comparators' register rankings in comparison to his, (2) the comparators' educational attainment,[10] or (3) the comparators' specialized work assignments and areas of expertise.  (Doc # 55, at 53.)  The Board claims that Mr. Holmes can only cite his own opinion in support of the proposition that he was and is equally or more qualified than others.  In support of its argument, the Board cites portions of

---

[10] The Board points out only that Carter has a law degree, and that Mr. Holmes does not, but the Board does not state what level of education Planer and Causey attained.

Mr. Holmes's deposition testimony.  There, he admits that he either did not know or could not remember the three comparators' "band" numbers on the promotion registers, (Dep. Thomas Holmes, at 163–64  (Doc. # 55-1, at 82)),  or their disciplinary records (Dep. Thomas Holmes, at 167 (Doc. # 55-1, at 84)), or their specializations, other than Planer's supervision of sex offenders, (Dep. Thomas Holmes, at 167 (Doc. # 55-1, at 84)).   But Mr. Holmes's deposition testimony about the comparators only establishes what he personally knew or remembered when he sat for his deposition.  His deposition testimony does not establish that Planer, Carter and Causey "are not comparable in all relevant respects."  (Doc. # 55, at 54.)

The court has considered whether the Board can move for summary judgment without citing evidence in the record that negates an element of Mr. Holmes's prima facie case.  The Eleventh Circuit explained in *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991), that "it is never enough" for the moving party "simply to state that the non-moving party cannot meet its burden at trial."  The moving party must "*point to materials on file* that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden."  *Id.* (emphasis added).  The Board does not point to evidence in the record showing affirmatively that the comparators were ranked or "banded" more favorably on the relevant promotional registers or that the comparators had valuable education or

field experience that Mr. Holmes lacked.  And aside from telling the court that Carter has a law degree, the Board does not show the court from the record what level of education the comparators attained at the time of their promotions, or how many years of service they had with the Board.  This essentially leaves the Board with the argument that Mr. Holmes cannot prove his case at trial.

And yet, Rule 56 permits this tactic.  It provides that "[a] party asserting that a fact cannot be or is genuinely disputed" may support its contention by showing "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).   The Advisory Committee Notes to the 2010 Amendments to the Rule explain Subdivision (c)(1)(B) as follows:

> Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials.   One party, without citing any other materials, may respond or reply that materials cited to dispute or support a fact do not establish the absence or presence of a genuine dispute.  *And a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.*

Fed. R. Civ. P. 56 advisory committee's note to 2010 amendments. (emphasis added).[11]  *See also* 10A Charles Alan Wright et al., Federal Practice and Procedure § 2727 (3d ed.) ("[A]s established in *Celotex*, it is not necessary for the movant to

---

[11] It is acknowledged that the Rule, as amended, undermines *Clark*'s announcement that "[e]ven after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial."  929 F.2d at 608.  But "[s]ubdivision (c) is new."  Fed. R. Civ. P. 56 advisory committee's note to 2010 amendments.  There is no Eleventh Circuit case law discussing Rule 56(c)(1)(B).  Furthermore,

introduce any evidence in order to prevail on summary judgment.  Rather, at least in cases in which the nonmoving party will bear the burden of proof at trial, the movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him.").

In the instant case, Mr. Holmes bears the burden at trial of making a prima facie case of race and sex discrimination by showing that he was in fact as qualified as or more qualified than Planer, Carter, or Causey.  Thus, the Board's motion for summary judgment is due to be granted if Mr. Holmes does not, as the Sixth and Seventh Circuits are fond of saying, "put up or shut up" on this element of his claims.  *See Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir. 1989); *Schacht v. Wisc. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999).

In response to the Board's argument, Mr. Holmes responds that "[t]he evidence clearly shows that [black] and/or female officers who were similarly situated . . . in all relevant respects were promoted to positions for which he was qualified and eligible for promotion."  (Doc. # 70, at 17.)  He also claims that his comparators' performance evaluations were comparable to or worse than his.  In support of his position, Mr. Holmes cites Paragraphs 5, 7, and 13 of his declaration.  (*See* Decl. Thomas Holmes (Doc. # 70-1, at ¶ 10).)  In those portions

19

of the declaration, Mr. Holmes testifies that he has more years of service, more education, and substantially similar job responsibilities as Planer, Carter, and Causey.[12]   But notably absent from the declaration and the remainder of Mr. Holmes's evidentiary submission is any admissible document or testimony showing the three comparators' tenure with the Board, educational background, or rank on the relevant Personnel Department registers from which they were selected for promotion.

Therefore, Mr. Holmes's declaration is inadequate to meet his evidentiary burden at summary judgment.  The Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value." *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000); *see also Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment.").  Mr. Holmes has had the opportunity to conduct discovery and to present relevant evidence in response to the Board's motion for summary judgment.  He has not met his burden in opposing the motion.

Furthermore, because Mr. Holmes fails to make a prima facie case of discrimination under Title VII, the court need not continue to progress through

---

[12] Attached to the Declaration, Mr. Holmes furnished copies of performance evaluations of the comparators for various one-year periods between 2009 and 2011.  But these documents only show that the comparators had comparable performance evaluations at random times prior to their promotions.  (*See* Doc. # 70-1, at 7–15.)  Comparable performance does not show that Mr. Holmes and the comparators were similarly situated in *all* relevant respects.

stages two and three of *McDonnell Douglas*.   *See Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").   Accordingly, the Board's motion for summary judgment is due to be granted.

## V.  CONCLUSION

Based on the foregoing analysis, it is ORDERED that the Board's motion for summary judgment (Doc. # 55) is GRANTED as to Mr. Holmes's Title VII race and sex discrimination claims.

A separate final judgment will be entered.

DONE this 28th day of February, 2014.

/s/ W. Keith Watkins
_____
CHIEF UNITED STATES DISTRICT JUDGE
